70 N.J. Super. 150 (1961)
175 A.2d 238
JOHN MELICHAREK, PLAINTIFF-APPELLANT,
v.
HILL BUS COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 2, 1961.
Decided October 27, 1961.
Before Judges GOLDMANN, FOLEY and LEWIS.
*151 Mr. Harry C. Chashin argued the cause for appellant (Messrs. Marcus & Levy, attorneys).
Mr. Harry L. Towe argued the cause for respondent (Messrs. Towe and Gilady, attorneys).
The opinion of the court was delivered by FOLEY, J.A.D.
Plaintiff, while a passenger for hire in a bus operated by defendant carrier, was struck in the right eye by a stone thrown by a teen-age boy from outside the bus. At the close of plaintiff's proofs the trial judge granted defendant's motion for a judgment of involuntary dismissal, and plaintiff appeals.
It is settled that on a motion which challenges the legal sufficiency of a case the truth of plaintiff's evidence is admitted, and he is entitled to the benefit of every legitimate inference which may be drawn therefrom. Melone v. Jersey Central Power & Light Co., 18 N.J. 163, 170 (1955). We assay the proofs in light of this principle.
The following facts may be inferred from the evidence. Plaintiff boarded defendant's bus in New York City at about 7:00 P.M. on June 30, 1958. It was a hot day and all windows of the bus were open. He took the aisle position on a two-place seat on the left side near the rear. John Weber, a friend, sat next to him. At about 7:25 P.M. while the bus was passing premises identified as 174 Knickerbocker Road, Englewood, N.J., plaintiff turned his head to speak to Mr. Weber. 174 Knickerbocker Road is the address of an American Legion Post home. Either on its grounds or adjacent thereto, were one or more tennis courts and a bridge spanning a brook. As the bus approached there were four boys standing either on a tennis court, or on the bridge, with arms overhead in a "throwing" position. As the bus passed, it was hit by three stones, and a fourth passed through an open window and struck plaintiff's right eye, so injuring it that surgical enucleation subsequently was required. Weber called for the bus driver to stop; he *152 did so. Plaintiff and Weber by foot, and the driver in a passing automobile, returned to the scene, and with the aid of one Harold P. Taylor, intercepted one or more of the boys a short distance away.
There was considerable evidence that similar occurrences in the area, while sporadic, were sufficiently frequent to permit an inference that they amounted to a known practice. Plaintiff himself said that there were prior occurrences "off and on" when stones were thrown at buses "along the way home." Weber said that there were "quite a few" such occurrences in the particular area, between 1951 and June 1958, estimating that this happened, "once or twice a year." Harold P. Taylor, a resident for 16 years at the Knickerbocker Road address, who saw the boys throwing stones as the bus passed, but did not know that an accident had occurred until the bus stopped and the plaintiff ran back, testified that over the entire period of his residence there, and "on an average of every two months or so," he had seen boys throwing stones at buses, at the tennis court, at "everything" and "anything." Harry W. Mowerson, a member of the American Legion Post, who had seen the bus approaching and the boys throwing stones, and heard a stone "hit the bus," also testified to previous like happenings. He said that "after school they [boys] come here in the evening and they throw stones all over the place, at the tennis courts and every place, * * * many a time I saw the kids throwing stones at cars and everybody else passing. Nobody happened to get hit." The prevalence of this dangerous activity was also substantiated by Adolf Contreni who testified that over a period of 15 years he had observed it "on an average of four or five times a year."
In general terms, the plaintiff's complaint was predicated upon the theory that defendant, owing a high degree of care to its passengers, was obliged to foresee the dangerous potentiality of a condition of which it had knowledge, or should have had knowledge in the proper discharge of its duty. The sweep of the claim if proved, was sufficiently *153 broad to affix liability upon defendant, (1) under the doctrine of respondeat superior for failure of its driver to exercise reasonable care under circumstances which were or should have been apparent to him on the particular occasion, and (2) for failure of the company itself, independent of the doctrine of respondeat superior, to guard against injuries to its passengers resulting from a dangerous practice the knowledge of which it was charged with, by reason of prior and repetitive acts of like nature. Cf. Harpell v. Public Service Coordinated Transport, 20 N.J. 309, 315-316 (1956).
In resisting the motion for involuntary dismissal plaintiff's attorney needlessly staked the sufficiency of his proof upon the applicability of the doctrine of res ipsa loquitur. However, the trial court did not decide the motion on this ground and appellant now concedes that the doctrine is inapplicable.
The precise question presented to the trial court was whether the case was controlled by Harpell v. Public Service Coordinated Transport, supra. There, plaintiff, a passenger in defendant's trolley car, was struck in the face by a jagged piece of concrete and pebble mixture which had been thrown by a 15 year old boy, through a closed window of the moving car. The car was proceeding on defendant's private right of way; the boy was standing beyond a fence which bordered it. Defendant's answers to interrogatories revealed prior knowledge of 17 somewhat similar occurrences along the route during the five years immediately preceding the accident, five of these during the immediately preceding year. A branch of plaintiff's theory of liability in Harpell was that defendant was negligent for not having installed "protective devices" to prevent injuries of the kind involved. Of course no such claim is advanced in the case at bar. However, the decision in Harpell did not turn on this point. Rather, in holding that a jury question was presented, the court rested its decision on the proposition that a carrier's "legal duty of care for the passenger's safety simply means care commensurate with the risk of harm  such as one exercising *154 a high degree of care for a passenger's safety `would under all the circumstances deem prudent to obviate the danger, known or reasonably to be anticipated.'" 20 N.J., at page 316. The court crystallized the issue thus:
"The question is whether the wrongful act of the third person could have been reasonably anticipated."
and concluded that:
"Here, what occurred was plainly not beyond the realm of reasonable prevision. Experience had taught the need for protection of the carrier's passengers against hostile and dangerous acts and conduct that had become recurrent; and it was the exclusive function of the jury to assess the circumstances in the context of the carrier's duty of care commensurate with the risk of harm, known or reasonbly to be anticipated."
The trial court was of the view that factually Harpell and the case sub judice differed; consequently, that submission of the case to the jury would require extension of the Harpell rule. Parenthetically, we observe that Harpell is not sui generis, as both the trial court and counsel seemed to indicate, nor was its holding "a deviation" from a prior rule, as was also intimated by the court. Its basic holding is completely consonant with the well established doctrine that if a carrier knows or has reasonable cause to know of the likelihood of injury to a passenger, and the danger is preventable by the exercise of due care, it is answerable for the consequences of nonconformance to that standard. See Kinsey v. Hudson & Manhattan R.R. Co., 130 N.J.L. 285, 288 (Sup. Ct. 1943), affirmed 131 N.J.L. 161 (E. & A. 1943).
The factual distinctions which led the trial court to grant defendant's motion appear to have been that, (1) in Harpell the defendant admitted knowledge of similar prior occurrences, (2) in that case the injury was sustained on defendant's private right of way, and (3) the trolley motorman admitted that he saw a boy with a rock in his hand and *155 warned him not to throw it. While the lack of such proof in the present case might in the minds of the jury impel the conclusion that what happened here was "beyond the realm of prevision," it cannot be said as a matter of law that the minds of reasonable men could not differ on the subject.
In the eyes of the law constructive knowledge is the equivalent of actual knowledge. Thus, if from the proven circumstances a jury could legitimately infer that defendant knew or should have known of the dangerous practice which resulted in plaintiff's injury, and that defendant might reasonably have anticipated its harmful potentiality, the same obligation to adopt reasonable protective measures devolved upon it as if it had confessed knowledge of prior like occurrences. So too, if it could be inferred that defendant's driver saw or should have seen the four boys standing in throwing position, as Melicharek and Weber did, it would be for the jury to say whether in proceeding within throwing range he acted with reasonable care, since his conduct would then be subject to the same scrutiny as if he had admitted that he saw the boys. Lastly, we think it of no determinative effect that plaintiff's injury was suffered on the public highway rather than on a private right of way. As a matter of fact, in the Harpell case the proximate cause of the injury was an act committed beyond the boundaries of the private right of way, and in the public domain, so to speak. But this aside, defendant's liability in a case such as this does not depend on where the accident happens. It arises from the duty the carrier owes to its passenger which continues throughout, and is coextensive with, the legal relationship of carrier and passenger, regardless of place.
Thus considered, the factual dissimilarities between the two cases are not differences in kind, and so of divergent legal effect, but merely involve differences in the degree of the cogency of the proofs.
We find that Harpell and cases cited therein are controlling and that the state of the case at the time the defendant's *156 motion was made was such that a jury could reasonably conclude that: (1) defendant had actual or constructive knowledge of the existence of extraordinary hazards to the safety of its passengers in the area in question, and was under a duty to take reasonable steps to abate the hazards, and to alert its drivers and passengers to them; (2) defendant through its driver observed or should have observed the four boys; should have appreciated the risks of injury to the passengers in proceeding; and either should have stopped the bus and dispersed the group or, at the very least, have apprised the passengers of the impending danger.
This being so, it was error to take the case from the jury.
Reversed and remanded for a new trial.